UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CIVIL ACTION NO:
_____

_____ )

THOMAS PAUL MAISANO,                    )
                                        )
                                        )        **JURY TRIAL**
                                        )        **DEMANDED**
                    Plaintiff           )
                                        )
        v.                              )
                                        )
                                        )
7-ELEVEN, INC.                          )
                                        )
                                        )
                    Defendant           )
_____ )

## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The plaintiff, Thomas Paul Maisano ("Mr. Maisano" or "Plaintiff"), is a male

resident of the State of New York residing at 84 Bridge Road, Manhasset, NY 11030. Manhasset

is located in Nassau County, New York.

2.      Defendant 7-Eleven, Inc. (the "Company," "7-Eleven," or "Defendant") is a

foreign corporation doing business in the state of New York. The Company's principal office is

located at 3200 Hackberry Road, Irving, Texas 75063.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mr.

Maisano has brought claims pursuant to the Age Discrimination in Employment Act ("ADEA")

29 U.S.C. §§ 621 *et seq.*, the Americans with Disability Act ("ADA") 42 U.S.C. §§ 1201 *et seq.*, and the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615. The court may exercise supplemental jurisdiction over Mr. Maisano's state and county law claims. 28 U.S.C. §1367.

4.      Venue is appropriate in the Eastern District of New York as the Company's acts and omissions giving rise to the claims in this Complaint occurred in the Eastern District of New York.  Indeed, Mr. Maisano worked for the Company and was fired by the Company within the Eastern District of New York. Additionally, Mr. Maisano resides within the Eastern District of New York.

5.      This court has jurisdiction over the Defendant 7-Eleven because 7-Eleven purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Maisano) in New York. Indeed, the Plaintiff was employed by 7-Eleven in the State of New York, was managed by 7-Eleven in the State of New York, and was terminated by 7-Eleven in the State of New York. Furthermore, 7-Eleven has registered with the State of New York as a foreign corporation doing business in the State of New York.

## STATEMENT OF FACTS

6.      Mr. Maisano is a 64-year-old man who was born in 1957.

7.      In or around June 2014, Mr. Maisano was hired by the Company as a Real Estate Representative working primarily out of his home office in Manhasset, NY.

8.      Throughout his employment by the Company, Mr. Maisano primarily worked from his home office at 84 Bridge Road, Manhasset, NY 11030. Importantly, at all relevant times, Mr. Maisano was considered by the Company to be a New York employee, and the

Company withheld applicable New York taxes and other New York withholdings from Mr. Maisano's paycheck.

9.      At all relevant times, Mr. Maisano, though employed on a remote basis, reported to the Company's principal office located at 3200 Hackberry Road, Irving, Texas 75063 (the "Principal Office").

10.     When Mr. Maisano was hired by the Company, Mr. Maisano was supervised by Ken Barnes ("Barnes") and Larry Book ("Book"), who reported to the Principal Office in Irving, TX.

11.     Indeed, at all relevant times, Mr. Maisano's assignments came from the Principal Office in Irving, TX.

12.     Barnes and Book received their own assignments from the Principal Office.

13.     Accordingly, Mr. Maisano was supervised by individuals whose worksite was considered to be the Principal Office and, indeed, received assignments from the Principal Office.

14.     Accordingly, Mr. Maisano's worksite, for the purposes of analysis under the Family and Medical Leave Act ("FMLA") was the aforementioned Principal Office based in Irving, TX.

15.     During all relevant times, 7-Eleven was engaged in interstate commerce or in an industry or activity affecting interstate commerce.

16.     Likewise, at all relevant times, 7-Eleven employed 50 or more employees during 20 or more calendar weeks in the current or preceding calendar year.

17.     Accordingly, at all relevant times, 7-Eleven was a covered employer under the Family and Medical Leave Act ("FMLA").

18.     Additionally, 7-Eleven employed 50 or more employees within a 75-mile radius of Mr. Maisano's worksite (Irving, TX).

19.     Further, 7-Eleven additionally employed 50 or more employees within 75 miles of Mr. Maisano's home office in New York.

20.     Importantly, at all relevant times, Mr. Maisano was a qualified employee and Mr. Maisano was satisfactorily performing all essential functions of his job.

21.     Indeed, through Mr. Maisano's formal evaluations, 7-Eleven made clear that Mr. Maisano either met or exceeded expectations in all performance reviews through 2018. Indeed, he received ratings of B (meets expectations) or A (exceeds expectations) for his performance reviews for 2014 through 2018.

22.     Throughout his employment, Senior Human Resources Representative Dionne Smith ("Smith") was one of Mr. Maisano's managers. Indeed, Smith had the power to hire and fire Mr. Maisano, supervised and controlled Mr. Maisano's conditions of employment including his work schedule, played a role in determining Mr. Maisano's rate and method of payment, and/or played a role in maintaining Mr. Maisano's employment records.

23.     At all relevant times, Mr. Maisano suffered from deafness and Meniere's disease.

24.     Mr. Maisano's deafness was and is an impairment that substantially limits one or more major life activities, including, but not limited to, listening and hearing, especially in social gatherings, crowded restaurants, and other crowded settings like meetings and substantially limits one or more of his major bodily functions including his neurological and auditory functions. As such, at all relevant times, Mr. Maisano was disabled under the Americans with Disabilities Act ("ADA"), the New York Human Rights Law, and the Nassau County Unlawful Discriminatory Practices Law.

25.     Mr. Maisano's Meniere's disease is a disorder of the inner ear that causes severe dizziness, vertigo, a feeling of stuffiness and congestion in the ears, tinnitus, and hearing loss. Mr. Maisano's Meniere's disease was and is an impairment that substantially limits one or more major life activities, including, but not limited to, hearing, walking, standing, and balancing and substantially limits one or more major bodily functions, including his neurological and auditory functions. As such, at all relevant times, Mr. Maisano was further disabled under the Americans with Disabilities Act ("ADA"), the New York Human Rights Law, and the Nassau County Unlawful Discriminatory Practices Law.

26.     These disabilities (deafness and Meniere's disease), for which Mr. Maisano received continuing care, were also serious health conditions under the FMLA at all relevant times.

27.     Shortly after the start of his employment, Mr. Maisano revealed his deafness and Meniere's disease disabilities to 7-Eleven through Barnes and Book.

28.     At all relevant times, 7-Eleven employed 20 or more employees during 20 or more calendar weeks in the current or preceding calendar year.

29.     At all relevant times, the Company was a covered employer under the FMLA. Additionally, the Company was an employer as defined by state and federal anti-discrimination laws, including the New York State Human Rights Law, the Nassau County Unlawful Discriminatory Practices Law, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act (ADA).

30.     From at least June 2015 through the end of Mr. Maisano's employment, Mr. Maisano had worked for the Company for at least 12 months and in excess of 1,250 hours during each preceding 12-month period, and as such was eligible for FMLA leave.

31.     In or around the beginning of January 2019, Barnes and Book, both individuals in their 60's were terminated from the Company and replaced by Sean O'Neill ("O'Neill") who became Mr. Maisano's supervisor in or around February 2019.

32.     O'Neill is significantly younger than Mr. Maisano, around 40 years old, and upon information and belief is non-disabled. From February 2019 on, Real Estate Manager O'Neill was Mr. Maisano's manager.

33.     When O'Neill became Mr. Maisano's supervisor, Mr. Maisano revealed his Meniere's disease and deafness disabilities to O'Neill and requested the reasonable accommodation of having O'Neill talk louder when he (O'Neill) was around him (Mr. Maisano) so he (Mr. Maisano) was better able to hear him (O'Neill).

34.     O'Neill, while initially agreeing to Mr. Maisano's reasonable accommodation request, began to treat Mr. Maisano in a hostile and discriminatory manner due to his age and disabilities.

35.     O'Neill would not speak loud enough for Mr. Maisano to hear him, despite Mr. Maisano requesting the reasonable accommodation of having O'Neill talk louder around him so he could hear him. Thus, O'Neill denied and failed to provide, this disability-related reasonable accommodation requested by Mr. Maisano.

36.     Indeed, O'Neill would frequently berate and harass Mr. Maisano, while not treating other younger, non-disabled employees in the same fashion.

37.     For example, O' Neill would frequently refer to Mr. Maisano as the "Old Guy."

38.     O'Neill also constantly mocked Mr. Maisano's disabilities, including Mr. Maisano's hearing loss.

39.     For example, O'Neill would say to Mr. Maisano's co-workers that they had to tell him things twice.

40.     Additionally, O'Neill would say, "Well you may have never heard this, but…" while talking to Mr. Maisano in a sarcastic tone, making a direct derogatory comment about Mr. Maisano's hearing loss. Indeed, O'Neill would make this comment even when it was clear that Mr. Maisano had not failed to hear anything and, as such, it was clear that O'Neill would make such comments in order to harass Mr. Maisano.

41.     Mr. Maisano raised protected concerns to O'Neill that these overtly discriminatory comments related to his age and disabilities made him uncomfortable, but O'Neill dismissed Mr. Maisano's protected concerns and continued to act in a discriminatory manner towards Mr. Maisano.

42.     During the period of October 2019 to March 2020, Mr. Maisano had to undergo three surgical operations related to a cochlear implant for his disabilities.

43.     Mr. Maisano requested of the Company the reasonable accommodation of utilizing a leave lasting three to four weeks to undergo and recover from these surgeries for his disabilities (which were serious health conditions under the FMLA).

44.     Mr. Maisano's reasonable accommodation request further constituted a request for FMLA-eligible leave.

45.     Mr. Maisano's accommodation for FMLA-eligible medical leave was granted by O'Neill and Smith.

46.     Mr. Maisano disclosed his disabilities to Smith in the context of requesting these accommodations.

47.     However, O'Neill made it clear to Mr. Maisano that he was not happy about Mr. Maisano taking FMLA-eligible medical leave for these surgeries, vowing that he would "deal with him" when he returned to work from this protected leave.

48.     Indeed, O'Neill began to give the territories that Mr. Maisano had been responsible for as a Real Estate Representative to younger, non-disabled employees.

49.     Mr. Maisano was able to return as scheduled.

50.     However, during Mr. Maisano's protected leave, the Company hired Gary Ford ("Ford").

51.     Ford is more than 15 years younger than Mr. Maisano, and upon information and belief, is non-disabled.

52.     O'Neill, in or around February 2020, shortly after Mr. Maisano returned from protected FMLA leave for his surgery for his serious health condition/disabilities, gave Ford one of Mr. Maisano's best performing and most important territories, Nassau County.

53.     O'Neill also assigned Mr. Maisano to the New York City territory, a highly unfavorable territory.

54.     This assignment was looked upon as the "kiss of death" territory by other similarly situated employees to Mr. Maisano within the Company, as New York City did not allow cigarette sales and cigarettes were a large part of Mr. Maisano's real estate deals as cigarette sales accounted for a huge profit margin for selected sites.

55.     It was clear that O'Neill was taking away from Mr. Maisano positively performing territories and assigning poor performing territories based on discriminatory and/or retaliatory motives. Indeed, O'Neill was intentionally trying to negatively impact Mr. Maisano's performance for discriminatory and retaliatory reasons.

56.     It was also around this time that O'Neill issued Mr. Maisano his 2019 review, which was the first negative performance review of his employment.

57.     Indeed, in addition to this negative performance review (which was untrue as the negative portions of this review alleged performance concerns related to events during Mr. Maisano's protected FMLA leave for which Mr. Maisano was not responsible), Mr. Maisano was issued a performance improvement plan ("PIP") by O'Neill and Smith, which O'Neill told Mr. Maisano lasted until the end of the 2020 fiscal year (October 2020) despite having no history of performance issues before this review.

58.     The performance review and PIP alleged that Mr. Maisano had not completed assignments during his FMLA leave, in clear interference with Mr. Maisano's protected leave. Indeed, placing Mr. Maisano on a PIP and alleging performance concerns for failing to complete assignments during his FMLA leave constituted a retroactive denial of this leave, and also sought to discourage Mr. Maisano from utilizing future leaves by putting him on notice that he would still be required to perform work during leave and would face adverse actions if he insisted on taking protected leaves (and not working during such leaves).

59.     Additionally, Mr. Maisano's territories were taken away during his FMLA leave, leaving him in a position where it would be harder to complete the objectives of O'Neill's arbitrary and discriminatory PIP.

60.     The removal of Mr. Maisano's territories during his FMLA leave was a failure to restore Mr. Maisano to his position, and, as such, interference with his FMLA leave.

61.     The untrue and undeserved negative performance review and PIP were clearly issued for discriminatory and retaliatory reasons because of Mr. Maisano's age, disabilities, and use of a protected FMLA leave.

62.     By issuing this PIP to Mr. Maisano when he had no history of prior disciplinary action or negative reviews at the Company, the Company skipped several steps in the Company's progressive discipline policy, including a verbal warning and a written warning.

63.     This negative review, PIP, and reassignment of territories were in clear retaliation for taking protected FMLA leave for his serious health condition/disabilities or otherwise due to his FMLA leave, disabilities, or age.

64.     Mr. Maisano raised protected concerns to O'Neill that this negative review, PIP, and reassignment of territories were due to his age and disabilities, as well as in retaliation for taking protected FMLA leave, and expressed concerns that O'Neill was setting Mr. Maisano up to fail in favor of the younger, non-disabled Ford.

65.     The primary objective set forth by this PIP was to close eight deal approvals before the end of October 2020.

66.     O'Neill continued to make discriminatory remarks related to Mr. Maisano's age and disabilities, including that his hearing was the reason for him not closing more deals (even though Mr. Maisano had closed a large number of deals).

67.     Mr. Maisano made progress towards the objectives of the arbitrary and discriminatory PIP, closing five of the eight required deal approvals of the PIP as of July 15, 2020.

68.     Mr. Maisano, in addition to the five closed deals, had six pending deal approvals that were on track to be approved prior to the end of October 2020.

69.     Accordingly, Mr. Maisano was fully on track to exceed the goals of the PIP, indeed he was on track to close eleven deals by the end of October 2020 (three more than the eight required by the discriminatory PIP).

70.     On or around July 31, 2020, three months before the close of the fiscal year and prior to the end of the PIP, O'Neill and Smith, in place of a regularly scheduled team call, called Mr. Maisano and informed Mr. Maisano that he was terminated.

71.      As an excuse for the termination, O'Neill and Smith alleged that Mr. Maisano was not going to successfully complete the PIP, despite the fact that Mr. Maisano had three more months to meet the goals and was on track to exceed the goals set by the PIP.

72.     Indeed, Mr. Maisano had three months remaining on his PIP which was due to end on October 31, 2020.

73.     Mr. Maisano would have achieved the PIP objectives, as he had five deal approvals solidified, with six pending deals at the time of his termination which were set to be approved prior to the close of the fiscal year.

74.     The Defendant knew about these facts and knew that the allegation that Mr. Maisano would not meet his PIP objectives were untrue.

75.     As such, it is clear that the Company terminated Mr. Maisano before the end of the PIP's duration exactly because he was on track to meet its objectives and wanted to terminate him before he could successfully meet the objectives as a pretextual attempt to justify Mr. Maisano's discriminatory and retaliatory termination.

76.     Indeed, the timing of Mr. Maisano's termination was suspect, as Mr. Maisano's prior performance assessments had noted his performance was satisfactory and his performance remained satisfactory through the time of his termination.  Thus, there was no non-discriminatory reason for him to be subjected to the PIP to begin with and certainly no justifiable reason for him to be terminated before the end of the PIP period.

77.     As such, it is clear that the Company's proffered reason for terminating Mr. Maisano was pretext.

78.     Indeed, the short time between Mr. Maisano's use of an accommodation in the form of approved FMLA leave for his disabilities and the issuance of his PIP made it clear that the PIP was issued in retaliation for Mr. Maisano utilizing FMLA leave and/or requesting and/or utilizing disability-related reasonable accommodations.

79.     Furthermore, the Company did not allow Mr. Maisano to finish the term of the PIP, and summarily terminated his employment, clearly terminating him in retaliation for requesting and/or utilizing reasonable accommodations, taking FMLA leave for his disabilities, engaging in protected activity, or otherwise due to his age and/or disabilities.

80.     Other younger, non-disabled employees were given the benefit of the Company's progressive discipline policy (which included a verbal and a written warning before being given a PIP), were not subjected to a PIP (and if subjected to a PIP, were allowed to finish its period), and were not terminated (or even disciplined) despite having worse performance than Mr. Maisano.

81.     Indeed, Ford was not subjected to any kind of discipline, despite having no deal approvals as of the time of Mr. Maisano's termination, and hence performing at a level far inferior to that of Mr. Maisano. Furthermore, Mr. Maisano's superior performance was achieved in a more difficult territory (New York City) whereas Ford's worse performance was achieved in an easier and more desirable territory that had been taken away from Mr. Maisano.

82.     Upon information and belief, the Company replaced Mr. Maisano with Ford, who was a younger, similarly or lesser qualified, non-disabled individual.

83.     Indeed, the Company retained the significantly younger, non-disabled Ford (who had not taken FMLA leave or engaged in protected activity) while terminating Mr. Maisano.

84.     The Company interfered with Mr. Maisano's rights under the FMLA by disciplining him for not completing assignments (i.e. not working) during his FMLA leave.

85.     The Company retaliated against Mr. Maisano's rights under the FMLA by ultimately terminating his employment after he utilized protected FMLA leave and/or reasonable accommodations for his disabilities.

86.     Mr. Maisano's termination took place in New York, and, upon information and belief, O'Neill was in New York when he made the decision to fire Mr. Maisano and when he actually terminated Mr. Maisano (a decision that was, upon information and belief, made by Smith as well).

87.     On November 13, 2020, Mr. Maisano timely filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

88.     On March 3, 2021, Mr. Maisano requested a dismissal for administrative convenience from the NYSDHR.

89.     The NYSDHR issued an administrative convenience dismissal on April 15, 2021.

90.     On April 29, 2021, the EEOC issued Mr. Maisano a Right to Sue letter.

91.     This lawsuit is timely filed.

## COUNT I

## (Interference with and Retaliation, for Exercising Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)

### Plaintiff v. 7-Eleven

92.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

93.     During all relevant times, the Company was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

94.     As such, at all relevant times, the Company was a covered employer under the FMLA.

95.     At all relevant times, the Company employed 50 or more employees within 75 miles of Mr. Maisano's worksite.

96.     At all relevant times (from June 2015 onward), Mr. Maisano had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

97.     As such, from June 2015 onward, Mr. Maisano was an eligible employee under the FMLA.

98.     Mr. Maisano suffered from one or more serious health conditions, including, but not limited to, his Meniere's disease and deafness.  Mr. Maisano received continuing care for these serious health conditions.

99.     Mr. Maisano was entitled to FMLA leave.

100.    Mr. Maisano sought to exercise his rights under the FMLA, including by requesting and utilizing one or more protected leaves under the FMLA.

146.    Mr. Maisano timely notified Defendant that he would need FMLA leave and properly completed, and timely turned in, all requested paperwork related to this leave request.

147.    Specifically, Mr. Maisano sought to exercise continuous leave to receive a cochlear implant for his Meniere's disease and deafness disabilities.

148.    The Defendant, including by and through its agents, interfered with Mr. Maisano's rights under the FMLA leave, including but not limited to, by subjecting Mr. Maisano to discipline and a PIP for allegedly not completing assignments during his FMLA leave, which constituted a retroactive denial of his right to FMLA leave and also was clearly intended to discourage Mr. Maisano from taking further future protected FMLA leave. The Defendant further interfered with Mr. Maisano's FMLA rights by taking away Mr. Maisano's territories during his FMLA leave and thus failing to restore him to the same or substantially similar position. Indeed, by taking away Mr. Maisano's territories, Defendant made it substantially harder for Mr. Maisano to perform his job and complete the objectives of the arbitrary and discriminatory PIP that was assigned to him.

149.    The Defendant, including by and through its agents, retaliated and/or discriminated against Mr. Maisano for requesting FMLA leave by subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review, subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, and/or terminating Mr. Maisano's employment.

150.    The Defendant's actions were willful violations of the FMLA and were undertaken in bad faith.

151.    As a direct and proximate result of the Defendant's violation of the FMLA, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

152.    Mr. Maisano seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT II

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. 7-Eleven**

101.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

102.    Mr. Maisano's deafness was and is an impairment that substantially limits one or more major life activities, including, but not limited to, listening and hearing, especially in social gatherings, crowded restaurants and other crowded settings like meetings and substantially limits one or more of his major bodily functions including his neurological and auditory functions. As

such, at all relevant times, Mr. Maisano was disabled under the Americans with Disabilities Act ("ADA").

103.    Mr. Maisano's Meniere's disease is a disorder of the inner ear that causes severe dizziness, vertigo, a feeling of stuffiness and congestion in the ears, tinnitus, and hearing loss. Mr. Maisano's Meniere's disease was and is an impairment that substantially limits one or more major life activities, including, but not limited to, hearing, walking, standing, and balancing and substantially limits one or more major bodily functions, including his neurological and auditory functions. As such, at all relevant times, Mr. Maisano was disabled under the Americans with Disabilities Act ("ADA").

104.    At all relevant times, the Company was an employer as defined by federal anti-discrimination laws, including the Americans with Disabilities Act, employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

105.    At all relevant times, Mr. Maisano was a qualified individual and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

106.    Mr. Maisano disclosed his disabilities to the Company, the Company was aware of Mr. Maisano's disabilities, and/or the Company regarded Mr. Maisano as disabled.

107.    Mr. Maisano requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, having people speak louder around him so that he could better hear with his disabilities and being allowed to utilize a medical leave.

108.    The Company denied some or all of the reasonable accommodations requested by Mr. Maisano, including speaking louder around him so that he could better hear with his disabilities by not speaking louder around him (and indeed mocking him when he made this reasonable accommodation request) and his requests for leave (retroactively denying it by punishing him for assignments that he could not do because of his leave).

109.    The Company and its agents failed to engage in an interactive dialogue related to some or all of Mr. Maisano's reasonable accommodation requests.

110.    Mr. Maisano's requested disability-related accommodations did not pose an undue burden on the Company.

111.    The Company, by and through its agents, discriminated against Mr. Maisano due to his disabilities by subjecting Mr. Maisano to adverse actions, including, but not limited to, subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review, subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away territories during his leave and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

112.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Maisano.

113.    As a direct and proximate result of the Company's violation of the ADA, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

114.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT III

**(Disability Discrimination and Failure to Accommodate under New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. 7-Eleven**

115.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

116.    Mr. Maisano's deafness was and is an impairment that substantially limits one or more major life activities, including, but not limited to, listening and hearing, especially in social gatherings, crowded restaurants, and other crowded settings like meetings and substantially limits one or more of his major bodily functions including his neurological and auditory functions. As such, at all relevant times, Mr. Maisano was disabled under the New York State Human Rights Law.

117.    Mr. Maisano's Meniere's disease is a disorder of the inner ear that causes severe dizziness, vertigo, a feeling of stuffiness and congestion in the ears, tinnitus, and hearing loss. Mr. Maisano's Meniere's disease was and is an impairment that substantially limits one or more major life activities, including, but not limited to, hearing, walking, standing, and balancing and substantially limits one or more major bodily functions, including his neurological and auditory

functions. As such, at all relevant times, Mr. Maisano was disabled under the New York State Human Rights Law.

118.    The Company was an employer as defined by state anti-discrimination laws, including the NYSHRL.

119.    At all relevant times, Mr. Maisano was a qualified individual and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

120.    Mr. Maisano disclosed his disabilities to Defendant, Defendant was aware of Mr. Maisano's disabilities, and/or Defendant regarded Mr. Maisano as disabled.

121.    Mr. Maisano requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, having people speak louder around him so that he could better hear with his disabilities and for a medical leave.

122.    Defendant denied some or all of the reasonable accommodations requested by Mr. Maisano, including speaking louder around him so that he could better hear with his disabilities (and indeed mocking him when he made this reasonable accommodation request) and his requests for leave (retroactively denying it by punishing him for things that he could not do because of his leave).

123.    Defendant failed to engage in an interactive dialogue related to some or all of Mr. Maisano's reasonable accommodation requests, mocking Mr. Maisano for requesting the reasonable accommodation.

124.    Mr. Maisano's requested disability-related accommodations did not pose an undue burden on Defendant.

125.     Defendant, by and through its agents, discriminated against Mr. Maisano due to his disabilities by subjecting Mr. Maisano to adverse actions, including, but not limited to, subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review, subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away territories during his leave and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

126.     Defendant's actions were wanton, malicious, and/or oppressive.

127.     Defendant acted willfully and/or with reckless disregard to the state protected rights of Mr. Maisano.

128.     As a direct and proximate result of the Defendant's violation of the NYSHRL, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

129.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

**COUNT IV**

**(Disability Discrimination and Failure to Accommodate under Nassau County Unlawful Discriminatory Practices law, Title C-2 § 21-9.8)**

**Plaintiff v. 7-Eleven**

130.　　The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

131.　　Mr. Maisano's deafness was and is an impairment that substantially limits one or more major life activities, including, but not limited to, listening and hearing, especially in social gatherings, crowded restaurants, and other crowded settings like meetings and substantially limits one or more of his major bodily functions including his neurological and auditory functions. As such, at all relevant times, Mr. Maisano was disabled under the Nassau County Unlawful Discriminatory Practices Law (NCUDPL).

132.　　Mr. Maisano's Meniere's disease is a disorder of the inner ear that causes severe dizziness, vertigo, a feeling of stuffiness and congestion in the ears, tinnitus, and hearing loss. Mr. Maisano's Meniere's disease was and is an impairment that substantially limits one or more major life activities, including, but not limited to, hearing, walking, standing, and balancing and substantially limits one or more major bodily functions, including his neurological and auditory functions. As such, at all relevant times, Mr. Maisano was disabled under the NCUDPL.

133.　　The Company was an employer as defined by the NCUDPL.

134.　　At all relevant times, Mr. Maisano was a qualified individual and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

135.    Mr. Maisano disclosed his disabilities to Defendant, Defendant was aware of Mr. Maisano's disabilities, and/or Defendant regarded Mr. Maisano as disabled.

136.    Mr. Maisano requested disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job.  These requested reasonable accommodations included, but were not limited to, having people speak louder around him so that he could better hear with his disabilities and for a medical leave.

137.    Defendant denied some or all of the reasonable accommodations requested by Mr. Maisano, including speaking louder around him so that he could better hear with his disabilities (and indeed mocking him when he made this reasonable accommodation request) and his requests for leave (retroactively denying it by punishing him for things that he could not do because of his leave).

138.    Defendant failed to engage in an interactive dialogue related to some or all of Mr. Maisano's reasonable accommodation requests, mocking Mr. Maisano for requesting the reasonable accommodation.

139.    Mr. Maisano's requested disability-related accommodations did not pose an undue burden on Defendant.

140.    Defendant, by and through its agents, discriminated against Mr. Maisano due to his disabilities by subjecting Mr. Maisano to adverse actions, including, but not limited to, subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review, subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away territories during his leave and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

141.    Defendant's actions were wanton, malicious, and/or oppressive.

142.    Defendant acted willfully and/or with reckless disregard to the county protected rights of Mr. Maisano.

143.    As a direct and proximate result of the Defendant's violation of the NCUDPL, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

144.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.


**COUNT V**

**(Age Discrimination in Violation of the Age Discrimination in Employment Act)**
**Plaintiff v. 7-Eleven**

145.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

146.    During all relevant times, the Company was an employer under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (hereinafter, "ADEA") because the Company employed 20 or more individuals for 20 or more calendar weeks during the relevant calendar years.

147.    The Company, by and through its agents, harassed and discriminated against Mr. Maisano with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Maisano's age and/or because Mr. Maisano was an older disabled individual ("age plus" discrimination).

148.    More specifically, the Company subjected Mr. Maisano to adverse actions because of his age, including, but not limited to, subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review, subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away his territories and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

149.    The Company acted with willful and/or knowing indifference to the federally protected rights of Mr. Maisano.

150.    As a direct and proximate result of the Company's violations of the ADEA, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

151.    Mr. Maisano seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT VI

## (Age Discrimination in Violation of New York State Human Rights Law, Executive Article 15, Section 296)

### Plaintiff v. 7-Eleven

152.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

153.    The Company was an employer as defined by state anti-discrimination laws, including the NYSHRL.

154.    At all relevant times, Mr. Maisano was over 40 years old.

155.    The Company, by and through its agents harassed and discriminated against Mr. Maisano with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Maisano's age and/or because Mr. Maisano was an older disabled individual ("age plus" discrimination).

156.    More specifically, the Company subjected Mr. Maisano to adverse actions because of his age, including, but not limited to, subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review, subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away his territories and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

157.    The Company's actions were wanton, malicious, and/or oppressive.

158.    The Company acted willfully and/or with reckless disregard to the state protected rights of Mr. Maisano.

159.    As a direct and proximate result of the Defendant's violation of the NYSHRL, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

160.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VII

**(Age Discrimination under Nassau County Unlawful Discriminatory Practices law, Title C-2 § 21-9.8)**

### Plaintiff v. 7-Eleven

161.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

162.    The Company was an employer as defined by county anti-discrimination laws, including the NCUDPL.

163.    At all relevant times, Mr. Maisano was over 40 years old.

164.    The Company, by and through its agents harassed and discriminated against Mr. Maisano with respect to his compensation, terms, conditions, and/or privileges of employment,

because of Mr. Maisano's age and/or because Mr. Maisano was an older disabled individual ("age plus" discrimination).

165.    More specifically, the Company subjected Mr. Maisano to adverse actions because of his age, including, but not limited to, subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review, subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away his territories and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

166.    The Company's actions were wanton, malicious, and/or oppressive.

167.    The Company acted willfully and/or with reckless disregard to the county protected rights of Mr. Maisano.

168.    As a direct and proximate result of the Defendant's violation of the NCUDPL, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

169.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**
**Plaintiff v. 7-Eleven**

170.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

171.    Mr. Maisano engaged in protected activity under the ADA, including, but not limited to, by raising protected concerns related to disability-related harassment and discrimination and/or by requesting and/or utilizing disability-related accommodations.

172.    The Company discriminated against and/or retaliated against Mr. Maisano for engaging in activities protected under the ADA, by subjecting Mr. Maisano to adverse actions, including, but not limited to, subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away territories during his leave and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

173.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Maisano's exercising of, or enjoyment of, one or more rights granted by the ADA.

174.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Maisano.

175.    As a direct and proximate result of the Company's violation of the ADA, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

176.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

### COUNT IX

**(Retaliation in Violation of the Age Discrimination in Employment Act)**

**Plaintiff v. 7-Eleven**

177.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

178.     Mr. Maisano engaged in protected activity under the ADEA, including, but not limited to: (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Maisano's age, including raising protected concerns about being subjected to disparate treatment due to his age that was worse than, and inconsistent with, the treatment of younger employees at the Company and being subjected to a harassing and otherwise hostile work environment.

179.     The Company retaliated against Mr. Maisano for opposing, expressing protected concerns, and/or engaging in other protected activity related to one or more practices made unlawful by the ADEA, by subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review, subjecting him to an unjustified PIP, falsely claiming that he failed to

satisfy the requirements of the PIP, taking away his territories and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

180.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Maisano's exercising of, or enjoyment of, one or more rights granted by the ADEA.

181.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Maisano.

182.    As a direct and proximate result of the Defendant's violations of the ADEA, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

183.    Mr. Maisano seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.


## COUNT X
### (Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)

### Plaintiff v. 7-Eleven

184.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

185.    Mr. Maisano engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Maisano's age, including raising protected concerns about being subjected to disparate treatment due to his age that was worse than, and inconsistent with, the treatment of younger employees at the Company and subjecting Mr. Maisano to a harassing and otherwise hostile work environment.

186.    Mr. Maisano additionally engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), by, (i) requesting and/or utilizing reasonable accommodations, (ii) protesting the failure to provide reasonable accommodations, and (iii) raising disability- related discrimination concerns.

187.    Defendant discriminated against and/or retaliated against Mr. Maisano for engaging in activity protected under the NYSHRL, by subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away territories during his leave and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

188.    Defendant acted with willful and/or reckless disregard to the state protected rights of Mr. Maisano.

189.    As a direct and proximate result of the Defendant's violation of the NYSHRL, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

190.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT XI

**(Retaliation for Engaging in Protected Activity Under Nassau County Unlawful Discriminatory Practices Law, Title C-2 § 21-9.8)**

**Plaintiff v. 7-Eleven**

191.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

192.    Mr. Maisano engaged in protected activity under the NCUDPL, including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Maisano's age, including raising protected concerns about being subjected to disparate treatment due to his age that was worse

than, and inconsistent with, the treatment of younger employees at the Company and subjecting Mr. Maisano to a harassing and otherwise hostile work environment.

193.    Mr. Maisano additionally engaged in protected activity under the NCUDPL by, (i) requesting and/or utilizing reasonable accommodations, (ii) protesting the failure to provide reasonable accommodations, and (iii) raising disability- related discrimination concerns.

194.    Defendant discriminated against and/or retaliated against Mr. Maisano for engaging in activity protected under the NCUDPL, by subjecting Mr. Maisano to a harassing and otherwise hostile work environment, subjecting him to unjustified discipline, issuing an unjustified negative performance review subjecting him to an unjustified PIP, falsely claiming that he failed to satisfy the requirements of the PIP, taking away territories during his leave and assigning him an unfavorable territory, and/or terminating Mr. Maisano's employment.

195.    Defendant acted with willful and/or reckless disregard to the county protected rights of Mr. Maisano.

196.    As a direct and proximate result of the Defendant's violation of the NCUDPL, Mr. Maisano has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

197.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain,

suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

WHEREFORE, the plaintiff, Thomas Paul Maisano, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff his reasonable attorney's fees;

J.  Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which he is entitled; and

L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

THOMAS MAISANO

By his attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:  May 6, 2021                    By:  */s/Trevor Brice*_____

Benjamin J. Wyatt (#5604590)
BWyatt@Wyattlegalservices.com

Timothy Brock (#5614151)
Tbrock@wyattlegalservices.com

Trevor R. Brice (#5816087)
Trevor@wyattlegalservices.com

Main Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
418 Broadway, 2nd Floor
Albany, NY 12207